AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Eastern District of North Carolina

FILED
JUL -7 2025
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY ___BC___ DEP CLK

| | |
|---|---|
| United States of America<br>v.<br>SAIMON SEAM<br><br>_____<br>*Defendant(s)* | )<br>)<br>)  Case No. 5:25-mj-1867-RJ<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 30, 2025__ in the county of __Wilson__ in the __Eastern__ District of __North Carolina__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1) | Distribution of five hundred (500) grams or more of cocaine, a Schedule II Controlled Substance. |

This criminal complaint is based on these facts:
See Attached Affidavidt.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

RODNEY MCCARTER  FBI SA
*Printed name and title*

Sworn to before me ~~and signed in my presence~~. via reliable electronic means and attested to under oath.

Date: July 7 2025

_____
*Judge's signature*

City and state: Wilmington, North Carolina

ROBERT B. JONES JR., U.S. Magistrate Judge
*Printed name and title*



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

## AFFIDAVIT FOR CRIMINAL COMPLAINT

I, Rodney McCarter, a Special Agent with the Federal Bureau of Investigation ("FBI"), being first duly sworn, hereby depose and state as follows:

### AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") assigned to the Charlotte Division, Greenville Resident Office. I have been a Special Agent with the FBI since August 2019. Prior to my employment with the FBI, I was a police officer in the state of Virginia for fourteen years. I have received training at the FBI Basic Agent Training Academy in Quantico, Virginia, where I have received instructions in criminal law, criminal procedure, and investigative techniques. In the course of my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics and the organization of drug conspiracies

2. In connection with my official FBI duties, I investigate criminal violations of federal and state drug and gun laws and related offenses, including but not limited to violations of Title 21, United States Code, Sections 841, 843, and 846, and Title 18, United States Code, Sections 371, 1952, 1956, 1957, 922(g), and 924(c).

3. I have received training both formal and informal, in the enforcement of drug laws, investigation of drug trafficking and money laundering organizations,



drug recognition and terminology, undercover operations, interviewing techniques, and the use of electronic surveillance. I have conducted investigations and/or participated in investigations related to the unlawful importation, possession with intent to distribute, and distribution of controlled substances. In conducting/participating in these investigations, I have used a variety of investigative techniques and resources, including, but not limited to, physical and electronic surveillance, the use of informants, and cooperating sources, the use of pen registers, and undercover operations. I have testified in judicial proceedings and prosecutions for violations of controlled substance laws. I have received experience in the investigation of drug trafficking organizations, including in drug recognition and terminology, undercover operations, interviewing techniques, financial/money laundering investigations, and the use of electronic surveillance. I have participated in investigations involving the following types of drugs: cocaine, cocaine base (crack cocaine), heroin, fentanyl, methamphetamine, and marijuana.

4. I have taken part in at least 50 drug and/or firearm investigations, including but not limited to, complex conspiracy investigations and multijurisdictional investigations. Through my training, experience, and interaction with experienced agents, and other narcotics investigators, I have become familiar with the methods employed by narcotics traffickers in general, and large domestic and foreign-based Drug Trafficking Organizations (DTO) in



particular, to smuggle, safeguard, and distribute narcotics, and to collect and launder narcotics-related proceeds.

5. Based upon my training and experience in the investigation of drug trafficking, and based upon interviews I have conducted with defendants, sources, and other witnesses, or participants in drug trafficking activity, I am familiar with the ways in which drug traffickers conduct their business, including the various means and methods by which drug traffickers import and distribute drugs; their use of cellular telephones to facilitate drug activity; and their use of code words to conduct their transactions. I am also familiar with the ways in which drug traffickers conceal, convert, transmit and transport drug proceeds, including, but not limited to the use of couriers to transport currency and proceeds, the use of third parties and nominees to purchase or to hold title to assets, and offshore accounts.

6. I have conducted analyses of telephone records for telephones used by drug traffickers. I know that drug trafficking is often furthered by using multiple cellular phones, multiple insulated contacts, and prepaid cellular phones. Use of the telephone in this manner is designed to help avoid detection by law enforcement or, in case one phone is compromised, to prevent the full scope of the drug trafficking organization from being identified by law enforcement. I further know that drug trafficking organizations routinely use a number of other operational techniques. These practices are designed and implemented to achieve two goals: first, to successfully facilitate the organization's illegal



activities, and second, to minimize the exposure of organization members, particularly those in management roles, from investigation and prosecution. I further know that drug traffickers often attempt to thwart law enforcement efforts by frequently changing and fictitiously registering vehicles, telephones, and utility services and/or having said items in other associate's names to conceal their true identities and/or detection. Again, these steps are designed to avoid detection and prosecution.

7. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter. Except as otherwise indicated, the actions, conversations, and statements of others identified in this Affidavit are reported in substance and in part. Similarly, where events are described with reference to dates and times the events should be read as having occurred on or about or at or about the dated and time referenced.

## PURPOSE OF AFFIDAVIT

8. This affidavit is submitted in support of the Criminal Complaint filed against SAIMON SEAM (herein after referred to as SEAM). Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Section 841(a)(1) –



distribution of five hundred (500) grams or more of cocaine, a Schedule II Controlled Substance has been committed by SAIMON SEAM.

## Background

9. Based upon an investigation by Special Agents of the Federal Bureau of Investigation (FBI), and other assisting agencies which has included information from confidential sources, controlled purchases, police reports, and surveillance, your affiant states that there is probable cause to believe that SAIMON SEAM has engaged in the commission of a violation of federal law, to wit: distribution of five hundred (500) grams or more of cocaine, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1)

10. Law Enforcement utilized a confidential human source (Herein after referred to as CHS-1). CHS-1 was introduced to SEAM during a controlled purchase of cocaine conducted on April 30, 2025. CHS-1 has previously provided information to law enforcement that they were able to independently verify.[1]

11. On April 30, 2025, CHS1 contacted LLOOSMAN ZABALA by phone at the direction of law enforcement and arranged to purchase to cocaine. ZABALA agreed to sell the cocaine to CHS-1. They agreed to meet at 5033 Raleigh Road Parkway West, Wilson, North Carolina.

---

[1] CHS-1 has convictions for Robbery with a Dangerous weapon (Felony), Possess with Intent to Sell Cocaine (Felony), Selling Cocaine (Felony), Conspire to Sell Deliver Marijuana (felony) and various misdemeanor. CHS-1 has pending charges and is cooperating in the hopes of gaining leniency from prosecution.



12. Law enforcement searched CHS-1 and their vehicle and no unauthorized United States Currency or controlled substances were found. CHS-1 was provided with recording device(s) and provided $28,000 in law enforcement funds for the controlled purchase.

13. CHS-1 traveled to 5033 Raleigh Road Parkway West, Wilson, North Carolina. SEAM arrived in a dark colored Toyota Camry, bearing the North Carolina registration plate KFZ-3996, registered to a NILUFAR YEASMIN of 100 Orvis Road, Holly Spring, NC. SEAM arrived at the direction of ZABALA.

14. SEAM provided the cocaine to CHS-1 by conducting a hand-to-hand transaction at the passenger side of SEAM's vehicle. The CHS-1 provided SEAM with $28,000 for the cocaine. CHS-1 left the area and met with law enforcement and provided them with what they had purchased from SEAM.

15. Law enforcement conducted a field test on the item purchased from SEAM and it tested positive for the presence of cocaine. The approximate weight of the cocaine was 1001.8 grams which included packaging material.

16. A law enforcement officer who is familiar with the appearance of SEAM has reviewed the audio/video recording from the controlled purchase and could observe SEAM in the video.

17. This investigation is ongoing and is expected to be ongoing following the execution of the instant warrant. Therefore, IT IS FURTHER REQUESTED that the arrest warrant, supporting application, affidavit, and

TS

associated pleadings be filed UNDER SEAL until further order of the Court or the defendant is arrested to avoid premature disclosure of the ongoing investigation, guard against flight, avoid the destruction of evidence, avoid the intimidation of witnesses, and better ensure the safety of agents and others, except that copies may be served on law enforcement officers of the FBI, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the Court's Orders.

(Remainder of the page intentionally left blank.)

## Conclusion

18. Based upon the foregoing information, your affiant believes probable cause exists that SAIMON SEAM committed violations of Title 21 of the United States Code Section 841(a)(1) – distribution of five hundred (500) grams or more of cocaine, a Schedule II Controlled Substance. I respectfully request that the Court issue a warrant ordering the arrest of SAIMON SEAM for said violation.

Rodney McCarter, FBI

On this **7** day of July 2025, Rodney McCarter, appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this Affidavit.

ROBERT B. JONES JR.
United States Magistrate Judge

TS